UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DARNELL MITCHELL,

                              Plaintiff,

          -against-                                        10 CV 0292 (RJH)

                                                    <u>**MEMORANDUM OPINION
                                                    AND ORDER**</u>

THE NEW YORK CITY DEPARTMENT OF
CORRECTIONS; (OFFICIAL CAPACITY) CORK
– CORRECTION #12310 OFFICER (5 am to 2
pm); (OFFICIAL CAPACITY) M.D. MRS. MARIE
DEVEZIN (7am to 3pm),

                              Defendants.

Richard J. Holwell, District Judge:

          Defendants New York City Department of Corrections ("NYCDOC") and Marie

Devezin ("Devezin") move to dismiss Plaintiff Darnell Mitchell's claim under 18 U.S.C.

§ 1983 for injuries and alleged improper treatment he received when a forklift ran over

his foot in the storeroom of a correctional facility.   For the reasons that follow, the Court

finds that Mitchell has not stated a claim under § 1983 for a violation of the Eighth

Amendment and grants defendants' motions to dismiss.

## BACKGROUND

          Mitchell's complaint alleges the following.  At the time of the events giving rise

to this action, Mitchell was incarcerated at the NYCDOC's Robert N. Davoren Complex

("R.N.D.C.") on Rikers Island.  (Compl. at 1.)  At 9:30 a.m. on July 30, 2009, Mitchell

was at work in the storehouse at R.N.D.C. in direct custody of "C.O. Cork #12310." (*Id.* at 1-2.)  Mitchell was "operating a manual jack with another inmate" when "someone pushed the loaded jack with over one thousand pounds of cargo[]over [his] left foot." (*Id.*)  Mitchell was not trained or supervised in performing this work and was not given boots despite having "asked numerous times" for them.  (*Id.* at 2.)

After sustaining his injury, Mitchell was taken to the clinic at R.N.D.C. where Devezin gave him "aspirin to subdue the pain." (*Id.*)  Mitchell alleges that he "was left in the clinic in extreme pain for two and a half to three hours" before a nurse "went to another doctor, who prescribed the plaintiff a shot of a pain killer." (*Id.*)  Thereafter, Mitchell was sent to another medical facility on Rikers Island for x-rays which turned up negative and then "immediately" to "an outside hospital" for additional x-rays which revealed that Mitchell's "left foot was fractured and had lacerations on the first and fourth toes. . . ." (*Id.* at 2-3.)  Mitchell remained in the hospital overnight on July 30 and was discharged the following day with a temporary cast.  (*Id.* at 3.)

In the days after his discharge back to R.N.D.C., Mitchell continued to experience pain.  His prescription painkiller was refilled.  (*Id.*)  On August 11, 2009, Mitchell was again sent to an outside hospital where he was fit with a permanent cast.  Some time thereafter, Devezin again examined Mitchell and cleared him to be sent to Downstate Correctional Facility.  (*Id.*)  Upon arrival at that facility, Mitchell was informed "that his foot had a distinct odor." (*Id.* at 4.)  At some later time, an orthopedist at cut through the cast, revealing "a hole as big as a gunshot wound all the way to the bone." (*Id.* at 4.)

On January 14, 2010, Mitchell filed this action [2] alleging "deliberate indifference" and "violations of [the] Eighth Amendment" against NYCDOC as well as

against Devezin and a party identified as "CORK – CORRECTION #12310 OFFICER (5 am to 2 pm)" in their official capacities.  (*Id.* at 4.)  Summons on "CORK – CORRECTION #12310 OFFICER (5 am to 2 pm)" was returned unexecuted [6] on the ground that nobody fitting that description was employed by NYCDOC.  That nominal defendant is therefore not formally a party to this action.  On May 21, 2010, Devezin filed a motion [16] under Federal Rule of Civil Procedure 12(b)(6) to dismiss Mitchell's action for failure to state a claim for which relief can be granted, or, in the alternative, for summary judgment under Federal Rule of Civil Procedure 56.  On May 25, 2010, NYCDOC filed its own motion [21] to dismiss under Rule 12(b)(6).

## LEGAL STANDARD

"Courts ruling on motions to dismiss must accept as true all well-pleaded facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Dickerson v. Mut. of Am.*, 703 F. Supp. 2d 283, 290 (S.D.N.Y. 2010).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between

3

possibility and plausibility of 'entitlement to relief.'"  *Id.*  (quoting *Twombly*, 550 U.S. at 557).

"A document filed *pro se* is 'to be liberally construed,' and a '*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  Courts must "read[] such submissions 'to raise the strongest arguments they suggest.'"  *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).  "However, even pro se plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Bridgewater v. Taylor*, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (quoting *Twombly,* 550 U.S. at 555).  *See also Andino v. Fischer*, 698 F. Supp. 2d 362, 376 (S.D.N.Y. 2010) ("While held to a less stringent standard, the *pro se* plaintiff is not relieved of pleading requirements, and failure to plead the basic elements of a cause of action may result in dismissal.").  Indeed, "pro se status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure." *Pandozy v. Segan*, 518 F. Supp. 2d 550, 554 (S.D.N.Y. 2007).

## DISCUSSION

Mitchell has brought a claim against both the NYCDOC and Devezin.  Mitchell's claim against the NYCDOC is technically barred by the New York City Charter which provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter Ch. 17 § 396.

"Thus where a plaintiff has named the Department of Corrections as a defendant, he has sued a non-suable entity." *Adams v. Galletta*, 966 F. Supp. 210, 212 (S.D.N.Y. 1997). *See also Sulehria v. City of New York*, 670 F. Supp. 2d 288, 325 (S.D.N.Y. 2009); *Pressley v. Green*, No. 02-CV-5261, 2004 WL 97701, at *2 (S.D.N.Y. Jan. 16, 2004). Nevertheless, because Mitchell's claim must "be liberally construed," *Erickson*, 551 U.S. at 94, and read "to raise the strongest arguments [it] suggest[s]," *Bertin*, 478 F.3d at 491, the Court will construe Mitchell's claim against NYCDOC as a claim against the City of New York.

However, "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory." *Monell v. Dep't of Soc. Serv. of City of New York*, 436 U.S. 658, 691 (1978) (emphasis in original). "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. *See also Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) ("To ultimately prevail on his municipal liability claim against the City, [a plaintiff] must establish that violations of his constitutional rights were precipitated by a municipal policy or custom."). Thus, "[t]o hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007). Mitchell fails to sufficiently allege any of these.

Mitchell essentially alleges three wrongs:  (1) that his foot was run over by a forklift; (2) that he was left in extreme pain for two to three hours; and (3) that his cast was improperly put on and this error was not promptly discovered.[1]  Devezin is only alleged to have had involvement in the latter two alleged wrongs.

With respect to his foot being run over by the forklift, Mitchell fails to allege that his injuries were caused by "an official policy or custom."  Mitchell does allege that he "had no training, nor was there any supervision" and that there was "no training, no supervision."  (Compl. at 2, 4.)   But such "[t]hreadbare recitals of the elements of a cause of action…do not suffice."  *Iqbal*, 129 S. Ct. at 1949.  Indeed, "[c]onclusory statements that a supervisory defendant failed to properly supervise or train prison personnel are insufficient to withstand a motion to dismiss."  *Howard v. City of New York*, No. 02-CV-1731, 2006 WL 2597857, at *9 (S.D.N.Y. Sept. 6, 2006).  *See also, e.g.*, *Jenkins v. City of New York*, 478 F.3d 76, 94-95 (2d Cir. 2007) (affirming dismissal of claim that New York "grossly failed to train and adequately supervise its police officers" where plaintiff "failed to allege any facts to support this claim").  Mitchell does not say how he became involved in working in the storehouse or exactly what he or anyone else was doing there at the time of the accident.  Without any of those facts, it is impossible to conclude that Mitchell or anyone else was not properly trained or supervised or that further training or supervision could have prevented Mitchell's injuries.

---

[1] Mitchell's complaint also could be read to allege that he suffered pain while wearing his temporary cast, perhaps because he "was put in a housing unit at the very end of the facility" following his return from the hospital.  (Compl. at 3.)   These allegations do not recite constitutional wrongs for the reasons stated below with respect to Mitchell's allegations of delay and improper setting of his cast.   Indeed, Mitchell acknowledges that he was given prescription painkillers during this period.  (*Id.*)

Moreover, the "custom or policy" doctrine the Supreme Court recognized in "*Monell* does not provide a separate cause of action for the failure by the government to train its employees; it *extends* liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation."  *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (emphasis in original).  Such claims "can only yield liability against a municipality where that city's failure to train reflects deliberate indifference to the constitutional rights of its inhabitants."  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 392 (1989).  In order to make a out a claim of deliberate indifference in the supervision context, "a plaintiff must establish three facts:  (i) that a policymaker knows to a 'moral certainty' that the municipality's employees will confront a certain situation; (ii) either that the situation presents the municipal employee with a difficult choice of the type that training or supervision will make less difficult, or that there is a history of municipal employees improperly handling the situation; and (iii) that the wrong choice by the municipal employee will often cause the deprivation of an individual's constitutional rights."  *Bowen v. County of Westchester*, 706 F. Supp. 2d 475, 491 (S.D.N.Y. 2010) (citing *Walker v. City of New York,* 974 F.2d 293, 297-98 (2d Cir.1992)).  Mitchell does not allege anything of the kind.

With respect to the alleged wrongs committed in connection with Mitchell's medical care after his initial injury, Mitchell has failed to allege the denial of a constitutional right.  "The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care."  *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006).  "Yet not every

lapse in medical care is a constitutional wrong." *Id.* "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong,* 143 F.3d 698, 702 (2d Cir. 1998) (brackets in original) (quoting *Estelle*, 429 U.S. at 104). Thus "a prison official violates the Eighth Amendment only when two requirements are met": (1) "the alleged deprivation of adequate medical care must be sufficiently serious"; and (2) "the charged official must act with a sufficiently culpable state of mind." *Salahuddin*, 467 F.3d at 279-80 (internal quotation marks omitted). Mitchell has not alleged facts that could satisfy either requirement.

With respect to his claim that he was left in extreme pain for two to three hours, Mitchell does not allege that he was ultimately denied proper care. Indeed, his complaint avers that he received an injection and was then sent to multiple medical facilities for x-rays and fitted with a cast. In that case, "it is appropriate to focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim." *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003) (emphasis in original) (quoting *Chance,* 143 F.3d at 702). "A delay in medical treatment does not by itself violate an inmate's Eighth Amendment rights unless the delay reflects deliberate indifference to a serious risk of health or safety, to a life-threatening or fast-degenerating condition or to some other condition of extreme pain that might be alleviated through reasonably prompt treatment." *Amaker v. Coombe*, No. 96-CV-1622, 2002 WL 523388, at *8 (S.D.N.Y. Mar. 29, 2002).

Courts in this Circuit have repeatedly held that pain experienced for even longer than two to three hours does not rise to the level of an Eighth Amendment violation. *See, e.g.*, *Alster v. Goord*, No. 05-CV-10883, 2010 WL 3835081, at *11 (S.D.N.Y. Sept. 10, 2010) (dismissing claim where corrections staff waited two days to send plaintiff to a hospital after he complained of abdominal pain); *West v. Brickman*, No. 07-CV-7260, 2009 WL 77866, at *4 (S.D.N.Y. Jan. 8, 2009) (dismissing claim for denial of painkillers where "defendants often provided such medication within hours of plaintiff's requests"). *Cain v. Jackson*, No. 05-CV-3914, 2007 WL 2193997, at *2, *6 (S.D.N.Y. July 27, 2007) (dismissing claim where defendant allegedly waited several hours to call medical unit regarding plaintiff's complaints of back pain); *Heredia v. Doe*, 473 F. Supp. 2d 462, 464 (S.D.N.Y. 2007) (adopting recommendation to dismiss claim where jail staff did not send plaintiff to hospital after slipping and falling on his back until the day after the fall); *Rodriguez v. Mercado*, No. 00-CV-8588, 2002 WL 1997885, at *9 (S.D.N.Y. Aug. 28, 2002) (dismissing claim where plaintiff "was seen within eight or nine hours of the incident by a nurse who prescribed him Tylenol"); *Linden v. Westchester County*, No. 93-CV-8373, 1995 WL 686742, at *3 (S.D.N.Y. Nov. 20, 1995) (dismissing claim "that employees of defendant DOC denied plaintiff a clinic visit for approximately eight hours, had a nurse rather than a physician attend to plaintiff, ignored plaintiff's pleas to be admitted to a hospital, and administered only pain pills to relieve plaintiff's suffering"). The Court does not mean to minimize any pain that Mitchell may have experienced between taking aspirin and receiving the injection. But the question for the Court is whether that pain is actionable under the Constitution and Mitchell's allegation that

medical staff denied him additional care for his foot pain for two to three hours does not state a claim for a violation of the Eighth Amendment.

Mitchell's final claim seems to be that there was "a hole as big as a gunshot wound all the way to the bone" in his foot. (Compl. at 4.)  Even if Mitchell's complaint could be read to allege that this condition was caused by the cast being improperly set, by Devezin's failure to discover that fact, or both, Mitchell has failed to allege facts that these alleges mistakes were the result of "deliberate indifference." "Deliberate indifference is a mental state equivalent to subjective recklessness" that "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Salahuddin*, 467 F.3d at 280.  "[R]ecklessness entails more than mere negligence; the risk of harm must be substantial and the official's actions more than merely negligent." *Id.*

Mitchell at most alleges that his cast was improperly set.   This is not a claim against Devezin because Mitchell alleges that his cast was put on by a doctor at an outside hospital, not by Devezin.  Moreover, "negligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance*, 143 F.3d at 703.  It is true that "certain instances of medical malpractice may rise to the level of deliberate indifference; namely, when the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) (citation omitted).   But because Mitchell does not allege any facts about his cast being set or even who set it, he has not stated a claim that it was set recklessly.

As for any failure to discover any alleged error in setting the cast, Mitchell does not allege that he or anyone else was aware "that his foot had a distinct odor" or that underneath his cast was "a hole as big as a gunshot wound all the way to the bone" until he was examined upon his arrival at Downstate Correctional Facility.  (Compl. at 4.)  If Mitchell did not sense that something was wrong with his foot, it hardly seems reckless that Devezin or others did not either.  In any event, assuming the problem was present when Devezin cleared Mitchell for transfer to Downstate and assuming that Devezin could have discovered the problem by conducting a more thorough examination, that, too, is an allegation of negligence or malpractice that does not rise to the level of a denial of any right under the Eighth Amendment.  *See Chance*, 143 F.3d at 703.  Mitchell therefore cannot recover under Section 1983.

At most, then, Mitchell's complaint appears to allege that Devezin and/or others were negligent or committed malpractice in not properly treating his fractured foot and in not discovering that an apparent infection had developed.  To the extent that Mitchell alleges or seeks to allege those claims, they are properly brought in state court, not in this Court.

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [16, 21] are GRANTED and plaintiff's complaint is dismissed without prejudice. Mitchell may file an amended complaint within 30 days if he can allege facts to establish (1) that Devezin acted with deliberate indifference to his medical condition or (2) that the City had a policy or custom in treating prisoners that caused his injuries.

SO ORDERED.

Dated: New York, New York
      February 14, 2011

Richard J. Holwell
United States District Judge